JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Megan Pastore

**DEFENDANTS**
Sharp Corporation d/b/a Sharp Packaging Solutions

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael Murphy, Esq., Murphy Law Group, LLC, Eight Penn Center, Suite 2000, 1628 John F. Kennedy Blvd., Philadelphia, PA 19103, 267-273-1054

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12101, et seq. (ADA), 29 U.S.C. § 2601, et seq. (FMLA)
Brief description of cause:
Discrimination and retaliation under the ADA and FMLA

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 12/01/2017
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 116 Country Club Drive, Lansdale, PA 19446

Address of Defendant: 7451 Keebler Way, Allentown, PA 18106

Place of Accident, Incident or Transaction: 7451 Keebler Way, Allentown, PA 18106
(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

ARBITRATION CERTIFICATION
(*Check Appropriate Category*)
I, Michael Murphy, Esq. _____, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 12/1/2017    Michael Murphy, Esq.    91262
                   Attorney-at-Law          Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/1/2017    Michael Murphy, Esq.    91262
                   Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Megan Pastore | : | CIVIL ACTION |
| v. | : | |
| Sharp Corporation d/b/a Sharp Packaging Solutions | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| December 1, 2017 | Michael Murphy, Esq. | Plaintiff Megan Pastore |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-273-1054 | 215-525-0210 | murphy@phillyemploymentlawyer.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

MEGAN PASTORE
116 Country Club Drive
Lansdale, PA 19446

   Plaintiff,

v.

SHARP CORPORATION d/b/a SHARP
PACKAGING SOLUTIONS
7451 Keebler Way
Allentown, PA 18106

   Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.: _____

JURY TRIAL DEMANDED

---

## COMPLAINT – CIVIL ACTION

Plaintiff Megan Pastore ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant Sharp Corporation d/b/a Sharp Packaging Solutions ("Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff brings this Complaint contending that Defendant discriminated against her and ultimately terminated her employment because of her disabilities, her past record of impairment, and/or because it regarded Plaintiff as disabled in violation of the ADA. Plaintiff further contends that Defendant failed to engage in the interactive process required under the ADA to determine whether Defendant could provide Plaintiff with a reasonable accommodation under the ADA, such as a modified work schedule and/or reasonable medical leave of absence, and ultimately terminated Plaintiff's employment for requesting such accommodations in violation of the ADA. Plaintiff further contends that Defendant interfered with the exercise of

her rights under the under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* and retaliated against Plaintiff for attempting to exercise her rights under the same.

## PARTIES

2. Plaintiff Megan Pastore is a citizen of the United States and Pennsylvania, and currently maintains a residence at 116 County Club Drive, Lansdale, PA 19446.

3. Defendant Sharp Corporation d/b/a Sharp Packaging Solutions is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address of 7451 Keebler Way, Allentown, PA 18106.

## JURISDICTION AND VENUE

4. October 4, 2016, Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission (the "EEOC"), which was dually-filed with the Pennsylvania Human Relations Commission (the "PHRC"), thereby satisfying the requirements of 42 U.S.C. § 12117(a); 2000e-5(b) and (e). Plaintiff's EEOC Charge was docketed as Charge No. 530-2017-00046. Plaintiff's EEOC Charge was filed within one hundred and eight (180) days of the unlawful employment practices alleged herein.

5. By correspondence dated September 5, 2017, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

6. On or about December 1, 2017, within the relevant statutory timeline, Plaintiff filed the instant matter.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

2

8. This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Plaintiff resides in this district and the events giving rise to this action occurred in this district.

## GENERAL FACTUAL ALLEGATIONS

11. Paragraphs 1 through 10 are hereby incorporated by reference as though the same were fully set forth at length herein.

12. Plaintiff began her employment with Defendant on or around October 10, 2011, when she was hired as a Validation Engineer.

13. Throughout the course of her employment, Plaintiff performed her job well, receiving positive feedback, no discipline (apart from an attendance-related warning in 2013 which Defendant later removed from Plaintiff's file upon her successful completion of a performance improvement plan), and regular raises. Indeed, in or around January 2015, Plaintiff was recommended for a promotion to the position of Senior Validation Engineer.

14. However, in or around September 2015, Plaintiff began to experience health-related issues associated with a hyperactive thyroid, which, compounded with her severe anxiety disorder and related cognitive issues, required Plaintiff to miss multiple days of work.

15. Plaintiff was also forced to miss work in order to care for her step daughter, who suffers from severe depression and anxiety.

3

16. On or around November 23, 2015, Plaintiff contacted Sandra Guzman ("Ms. Guzman"), Human Resources Representative, to inquire about the possibility "brief FMLA or something similar related to some at home and health issues."

17. Although Ms. Guzman responded by telling Plaintiff that she could speak with Thomas Deutsch ("Mr. Deutsch"), Defendant's Director of Human Resources "regarding FMLA or STD," she told Plaintiff that she herself was not currently available for such a conversation.

18. Plaintiff subsequently followed up with an email to both Ms. Guzman and Mr. Deutsch in which she referred to her "own stress levels," which had increased and for which her doctor had recommended a medical leave of absence, and provided Ms. Guzman with additional information regarding her step daughter's serious health condition and Plaintiff's need for a flexible schedule to care for her.

19. Plaintiff's anxiety disorder constituted a serious health condition entitling Plaintiff to leave under the FMLA.

20. Plaintiff's step daughter's depression and anxiety constituted a serious health condition entitling Plaintiff to leave under the FMLA to care for her.

21. Although Plaintiff subsequently followed up these inquiries regarding FMLA leave and/or short term disability by email on multiple occasions through December, January, and February, Defendant did not provide Plaintiff with notice of her rights under the FMLA.

22. Plaintiff further informed her supervisor, Chris Heinz ("Mr. Heinz"), who was copied on some of the above-referenced emails regarding FMLA leave, about her anxiety disorder and depression and inquired into the possibility of a flexible schedule which would allow her to adjust to her new medication regimen.

23. Plaintiff's anxiety disorder and depression constitute mental impairments which, when acute, limit Plaintiff in one or more major life activities, including, but not limited to, thinking, concentrating, interacting with others, working, and sleeping.

24. Although Mr. Heinz told Plaintiff that he would follow up with her about this potential accommodation for her disabilities, he did not do so.

25. Indeed, rather than engage in an interactive process with Plaintiff for determining the feasibility of a modified work schedule, Mr. Heinz told Plaintiff that her husband needed to "step up" and assist her with certain familial obligations which were exacerbating Plaintiff's anxiety disorder.

26. In or around late January 2016, not long after Plaintiff began inquiring about the possibility of a reasonable accommodation for her disabilities and/or FMLA leave, Mr. Heinz notified Plaintiff that, contrary to what he had suggested the previous year, Plaintiff would not be receiving a promotion to Senior Validation Engineer.

27. In explaining why she would not be receiving the promotion, Mr. Heinz referred to Plaintiff's recent disability-related absences from work.

28. Plaintiff subsequently learned that, upon information and belief, Brett Showers, one of her male coworkers, had been promoted in her stead, despite the fact that he had less seniority than her and, upon information and belief, did not possess a four-year degree.

29. On or around March 8, 2016, Plaintiff sustained a concussion as a result of a fall and began to experience, among other things, severe fatigue, headaches, difficulty sleeping, dizziness, and increased anxiety.

30. After first attempting to return to work, on or around March 11, 2016, Plaintiff was ultimately diagnosed with post-concussion syndrome and, as a result, was forced to go out

on medical leave in order to obtain post-concussion treatment and physical and/or occupational therapy.

31. Plaintiff's post-concussion syndrome constituted a physical impairment which significantly limited Plaintiff in one or more major life activities, including, but not limited to, sleeping, concentrating, thinking, working, and interacting with others.

32. Plaintiff's post-concussion syndrome constituted a serious health condition within the meaning of the FMLA.

33. Defendant ultimately granted Plaintiff's request for a leave of absence in connection with her disability.

34. On or around April 1, 2016, Plaintiff's doctor recommended that she be released to work on a modified work schedule in order to help her to re-acclimate to the work environment while continuing to undergo physical and/or occupational therapy.

35. In this regard, given Plaintiff's improving but still disabled condition, Plaintiff's doctor advised her that gradual reintegration into the work environment would allow her to return to work on a full-time basis more quickly and with greater confidence than if she were to remain out on disability leave until she was fully cleared for work.

36. However, when Plaintiff requested a reasonable accommodation in compliance with these work restrictions, Defendant responded, on or around April 4, 2017, that Defendant "does not offer" modified scheduling and that she would only be allowed to return to work if she received a 100% medical release with no restrictions.

37. Indeed, in correspondence from Ms. Guzman dated March 24, 2016 regarding FMLA paperwork related to Plaintiff's concussion, Defendant advised Plaintiff, "In order for

6

you to return to work, you must bring a note from your doctor releasing you to work without restrictions."

38. Defendant failed to notify Plaintiff of her eligibility for intermittent leave under the FMLA which might allow her to return to work on the modified schedule requested by Plaintiff.

39. As a result, Plaintiff was not permitted to return to work despite her doctor's assessment that she could perform the essential functions of her job with the reasonable accommodation of a temporary modified schedule.

40. On or around July 24, 2016, Plaintiff provided Ms. Guzman with an update medical note and specifically requested whether "any reasonable accommodations can be made for [her] return to work."

41. On or around July 29, 2016, Ms. Guzman responded to Plaintiff's request for an accommodation by stating, "Live previous respond [sic], Sharp does not have a modified schedule. For you to return to work it must be a full released [sic]."

42. Upon information and belief, Defendant refused to consider Plaintiff's request for a reasonable accommodation, in part, because of prejudicial attitudes towards individuals disabled by concussions and/or other traumatic brain injuries.

43. In this regard, Mr. Deutsch told Plaintiff that Defendant had once allowed a female employee suffering from a concussion to return to work, that said individual had suffered a "breakdown" in the workplace, and that he thus felt "uncomfortable" with allowing an individual suffering post-concussion syndrome to return to work absent a full medical release.

44. As a result of Defendant's failure to accommodate Plaintiff, Plaintiff remained on medical leave despite her ability to return to work with a reasonable accommodation in the form of a modified work schedule.

45. Although Plaintiff's health was improving, on or around September 21, 2016, Plaintiff received a letter from Defendant stating that she was being terminated because she had "not been able to return to work due to [her] illness."

46. In explanation, the letter from Defendant explained that it was "Company policy . . . to keep employees on our active roster while on medical leave up to a maximum of 6 months," and that because Plaintiff had been "absent for that time period," Defendant "must therefore terminate [Plaintiff's] employment with Sharp Corporation."

47. At no point did Defendant attempt to contact Plaintiff to discuss the timing of Plaintiff's return to work, or the possibility of extending her leave beyond the six month maximum provided in its policies.

48. Plaintiff was ultimately released to work without restrictions the following day.

49. It is believed and therefore averred that Defendant terminated Plaintiff because of her disabilities, her past record of impairment, and/or because Defendant regarded her as disabled in violation of the ADA, and in retaliation for requesting a reasonable accommodation for her disability and/or leave under the FMLA.

50. It is believed and therefore averred that Defendant decided not to promote Plaintiff to the position of Senior Validation Engineer as a result of her disabilities, her past record of impairment, and/or because Defendant regarded her as disabled in violation of the ADA, and as a result of her requests for FMLA leave.

51. Defendant failed to engage in the interactive process with Plaintiff to determine whether Defendant could provide Plaintiff with a reasonable accommodation, such as a modified work schedule or extended medical leave, which would allow Plaintiff to perform the essential functions of her job.

52. Defendant failed to provide Plaintiff with notice of her rights under the FMLA, including the right to intermittent leave, to care for her own serious health conditions.

53. Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, struggled to obtain other employment and has been and will be forced to expend significant amounts of money on health insurance premium payments.

54. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

<u>COUNT I</u>
<u>AMERICANS WITH DISABILITIES ACT</u>
<u>42 U.S.C. § 12101, et seq.</u>
<u>DISCRIMINATION</u>

55. Paragraphs 1 through 54 are hereby incorporated by reference as though the same were fully set forth at length herein.

56. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

57. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

58. As described above, Plaintiff's anxiety disorder, depression, and post-concussion syndrome are/were mental and/or physical impairments that substantially limited/limit Plaintiff in one or more major life activities.

59. Defendant was aware of Plaintiff's disabilities, record of disability/impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

60. Upon information and belief, Plaintiff has since been replaced by a non-disabled individual.

61. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees have violated the ADA by discharging Plaintiff because of her disability, her record of disability/impairment, and/or or because they regarded her as being disabled within the meaning of the ADA.

62. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

b) Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

c) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

d) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

e) Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

f) Pre-judgment interest in an appropriate amount;

g) Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. 951, *et seq.*
## DISCRIMINATION AND RETALIATION

63. Paragraphs 1 through 62 are hereby incorporated by reference as though the same were fully set forth at length herein.

64. The conduct described herein and above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, in that Defendant unlawfully and illegally discriminated against Plaintiff because of her disabilities, past record of impairment, and/or because Defendant regarded Plaintiff as disabled.

65. Plaintiff is therefore afforded the opportunity to seek any and all remedies available under the PHRA, 43 P.S. § 951, *et seq.*

66. Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages in the form of, inter alia, loss of past and future wages and compensation, personal humiliation, emotional distress, embarrassment, loss of employment,

11